UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILLIAN TEWAH ANYAM,<br>Petitioner,<br>v.<br>CHRISTOPHER LaROSE,<br>Respondent. | Case No.: 26-cv-4540-JES-SBC<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>**[ECF No. 1]** |

Before the Court is Petitioner Gillian Tewah Anyam's ("Petitioner") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Pursuant to the Court's order to show cause, Respondents filed a return to the petition. ECF No. 4. After due consideration and for the reasons stated below, the Court **GRANTS** the petition.

## I. BACKGROUND

Petitioner is a native of Cameroon who entered the United States on January 5, 2026 and has since been held in immigration detention at Otay Mesa Detention Center ("OMDC"). ECF No. 1 ¶ 1. She applied for asylum and withholding of removal, but all claims were denied by an Immigration Judge ("IJ") on June 23, 2026. *Id.* ¶¶ 4-6. She is currently appealing that decision with the Board of Immigration Appeals ("BIA"). *Id.* ¶ 7. In her petition, Petitioner raises claims regarding the length of her detention to date without a bond hearing. *Id.* ¶¶ 24-53.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Respondent's primary argument in the return is that the "petition fails to supply sufficient or coherent factual information for the Court to adjudicate her claims, or to establish that she is unlawfully detained." ECF No. 4 at 2. However, the Court is able to discern a cognizable claim based on the facts presented.

Petitioner was apprehended at the border and appears to be detained under 8 U.S.C. § 1225(b). As this Court has recognized previously, numerous district courts have found that prolonged mandatory detention at some point will raise due process considerations. *See Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal

proceedings, without a bond hearing, will—at some point—violate the right to due process.") (internal citation omitted); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process.").

"Neither the Ninth Circuit nor the Supreme Court have provided guidance regarding the point at which an immigration detainee's prolonged mandatory detention becomes unconstitutional." *Amado v. United States Dep't of Just.*, No. 25CV2687-LL (DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025). This Court has previously adopted the test enunciated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019), where the district court considered the following six factors in the § 1225(b) context: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *See also Amado*, 2025 WL 3079052, at *5 (applying 6-factor *Banda* test to mandatory detention under § 1225(b)); *Kadir v. LaRose*, 25CV1045-LL-MMP, 2025 WL 2932654 (S.D. Cal. Oct. 15, 2025) (same); *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *4 (S.D. Cal. Sept. 26, 2025); *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025).

The <u>first</u> *Banda* factor, the length of detention, is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Petitioner has been detained since January 5, 2026, so her detention is now over seven months. While this factor itself is not dispositive, the length now is within the range such that this factor should weigh in favor of Petitioner. *Amado*, 2025 WL 3079052, at *5 ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable" (citing cases)).

The <u>second</u> *Banda* factor is the likely duration of future detention, and considers "anticipated duration of all removal proceedings—including administrative and judicial

appeals." *Banda*, 385 F. Supp. 3d at 1119. Here, Petitioner has filed an appeal to the BIA and will have an opportunity to appeal to the Ninth Circuit as well. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020) ("The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. . . . If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals."). These appeals can take a long time. *See Banda*, 385 F. Supp. 3d at 1119 (finding appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer). Petitioner's position is identical to the *Banda* petitioner, where there was a final removal order from an IJ and he had just filed an appeal to the BIA. The *Banda* court concluded that this factor favored the petitioner under these circumstances, and the Court agrees here.

The <u>third</u> *Banda* factor is regarding the conditions of detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at OMDC are "indistinguishable from penal confinement." *See Kydyrali*, 499 F. Supp. 3d at 773; *Amado*, 2025 WL 3079052, at *6. The Court finds that this factor also weighs in favor of Petitioner.

The <u>fourth</u> and <u>fifth</u> *Banda* factors look to the nature and extent of any delays in the removal proceedings caused the petitioner and then the government respectively. *Banda*, 385 F. Supp. 3d at 1119-1120. There is no indication in any of the filings before the Court that either Petitioner or Respondent caused any delays in the proceedings. Thus, the Court finds that both of these factors are neutral.

The <u>sixth</u> *Banda* factor looks to the likelihood that the removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 ("In other words, the Court considers whether the noncitizen has asserted any defenses to removal."). The Court

is in no position to judge the likelihood of success in Petitioner's appeal, thus the Court finds this factor mostly neutral.

In summary, at least three of the six factors weigh in favor Petitioner, with the other factors being neutral. Accordingly, the Court concludes that Petitioner's seven-month detention under § 1225(b) has become unreasonable and due process requires the Government to provide her with an individualized bond hearing at this time.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and **ORDERS** as follows:

(1) The Court **ORDERS** the government to provide the Petitioner (noncitizen) with a constitutionally adequate and individualized bond determination hearing within **fourteen days** of this Order, unless the noncitizen requests a continuance.

a. At the hearing, the government **SHALL BEAR** the burden of establishing by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk if released;

b. The IJ **SHALL** consider alternative conditions of release and the noncitizen's ability to pay bond if he or she determines bond is appropriate; and

c. The government **SHALL** make a complete record of the bond hearing available to the non-citizen and her counsel.

(2) The government is **ORDERED** to File a Notice of Compliance within **five days** of providing the noncitizen with the bond hearing, including apprising the Court of the results of the hearing and providing a copy of the bond order.

//

//

//

//

//

The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: August 19, 2026

Honorable James E. Simmons Jr.
United States District Judge